# Illinois Official Reports

## Supreme Court

---

### *Doe v. Coe*, 2019 IL 123521

---

| | |
|---|---|
| Caption in Supreme Court: | JANE DOE *et al.*, Appellees, v. CHAD COE *et al.* (First Congregational Church of Dundee, Illinois, *et al.*, Appellants). |
| Docket No. | 123521 |
| Filed | May 23, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Kane County, the Hon. James R. Murphy, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part. Circuit court judgment affirmed in part and reversed in part. Cause remanded. |
| Counsel on Appeal | Michael Resis and Mari Ann Novy, of SmithAmundsen LLC, of Chicago, for appellants. |
| | Kevin M. Lyons and Stephanie Kopalski, of Lyons Law Group, LLC, of Downers Grove, and Francis C. Lipuma, of Chicago, for appellees. |
| | Stanley L. Tucker and Carissa A. Bryant, of Tucker Hartzell and Bryant, of Carthage, for *amicus curiae* Illinois Trial Lawyers Association. |

Justices      JUSTICE GARMAN delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, Burke, Theis, and Neville concurred in the judgment and opinion.

Chief Justice Karmeier took no part in the decision.

## OPINION

¶ 1  Plaintiffs, Jane Doe and her parents, brought suit against two individuals and several entities including and affiliated with the United Church of Christ (UCC) after Jane was sexually assaulted by a youth pastor. Relevant to this appeal, plaintiffs alleged that the First Congregational Church of Dundee (FCCD) and its pastor, Aaron James, negligently and willfully and wantonly hired, supervised, and retained FCCD's director of youth ministries, Chad Coe.

¶ 2  Plaintiffs amended their complaint twice. All counts of the second amended complaint were dismissed under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)) as against FCCD and James. Plaintiffs appealed the dismissal, and the appellate court affirmed in part, reversed in part, and remanded for further proceedings. We granted FCCD and James's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Apr. 1, 2018). In this case, we are called on to decide whether plaintiffs have adequately pled their causes of action against FCCD and James, as well as whether the circuit court properly struck certain allegations from the complaint.

¶ 3              BACKGROUND

¶ 4  Plaintiffs initially filed their complaint in the Kane County circuit court in August 2015. They alleged various claims against Coe, James, and FCCD, as well as the Fox Valley Association of the Illinois Conference of the United Church of Christ, the Illinois Conference of the United Church of Christ, the United Church of Christ, the General Synod of the United Church of Christ, and the United Church of Christ Board (UCC defendants). FCCD and James moved to dismiss the counts against them, and the circuit court granted the motion pursuant to section 2-615 of the Code as to FCCD and section 2-619.1 of the Code as to James (735 ILCS 5/2-615, 2-619.1 (West 2014)). Plaintiffs filed an amended complaint, alleging four counts—negligent supervision, negligent retention, willful and wanton failure to protect, and willful and wanton retention and failure to supervise—against both FCCD and James, with another count—negligent hiring—against FCCD alone. FCCD and James moved again to dismiss under section 2-615 of the Code (*id.* § 2-615). FCCD and James also moved alternatively to strike certain paragraphs as irrelevant or cumulative, also under section 2-615 (*id.*).

¶ 5  The circuit court agreed with FCCD and James that plaintiffs failed to state a cause of action and dismissed the counts against them. The court found that nothing in the complaint indicated that either FCCD or James knew or should have known of Coe's misconduct prior to his assault of Jane. Regarding the negligent hiring count against FCCD, it found that plaintiffs'

allegation that an online search would have revealed Coe's activity on pornographic websites was not plausible because Coe used a pseudonym.

¶ 6    The court denied plaintiffs leave to replead the willful and wanton counts against FCCD or any of the counts against James. It reasoned that there was little chance that plaintiffs would be able to plead the willful and wanton counts, which alleged aggravated forms of negligence, if they failed to plead simple negligence after two attempts. Further, it held, although James's acts and omissions as an agent of FCCD may form the basis for FCCD's liability, James himself was not personally liable. The court also granted in its entirety FCCD and James's motion to strike irrelevant or cumulative paragraphs from the complaint. The court allowed plaintiffs to replead the negligence claims against FCCD and, after reconsidering, against James.

¶ 7    The UCC defendants are not part of this appeal. The court also dismissed the claims against them, and that appeal proceeded separately. See *Doe v. Coe*, 2017 IL App (2d) 160875. Coe is also not part of this appeal.

¶ 8                          Plaintiffs' Second Amended Complaint

¶ 9    Plaintiffs' second amended complaint, including the allegations stricken from the first amended complaint realleged and preserved, is the subject of this appeal. In it, plaintiffs alleged 22 counts against Coe, FCCD, James, and the UCC defendants. Counts I through VII are against Coe. Counts XVII through XXII are against the UCC defendants.

¶ 10    Against James, plaintiffs alleged counts VIII (negligent supervision), IX (negligent retention), X (willful and wanton failure to protect), and XI (willful and wanton retention and failure to supervise). Against FCCD, plaintiffs alleged counts XII (negligent hiring), XIII (negligent supervision), XIV (negligent retention), XV (willful and wanton failure to protect), and XVI (willful and wanton retention and failure to supervise). These counts are at issue in this appeal.

¶ 11    Because this appeal resulted from a section 2-615 dismissal, the summary of facts is drawn from plaintiffs' second amended complaint. This appeal concerns whether certain allegations were properly stricken from plaintiffs' first amended complaint and whether plaintiffs have adequately pled that FCCD and James acted negligently or willfully and wantonly in hiring, supervising, and retaining Coe.

¶ 12    Plaintiffs' second amended complaint was 564 paragraphs, including those stricken and reserved against the UCC defendants. The appellate decision below quoted a good number of the allegations from the complaint. 2018 IL App (2d) 170435, ¶ 43. We summarize them to the extent they are relevant to our decision.

¶ 13    Plaintiffs alleged that FCCD and James were bound to follow a recommended "Safe Church Policy," which was provided to UCC local churches. The complaint defined the term "Inappropriate" as "Inappropriate Content, Inappropriate Displays of Affection, Sexual Harassment, and Sexual Exploitation, as defined by UCC policies and materials, as well as conduct or materials defined by Illinois law to be Grooming, Sex Offenses, Harmful to Minors, Obscene, Adult Obscenity or Child Pornography Internet Site." Plaintiffs further alleged that Coe was under the direct supervision of James, who was under the direct supervision and employ of FCCD; that no background check was completed on Coe when he was hired or at any time thereafter; that Coe's office was near James's and that James and other adults were

often present when Coe was working; and that Coe used the same pseudonym, "BluesGod88," to "friend" youth and adult members of the church on social media sites and to post obscene photos of himself on pornographic websites. They alleged that the pseudonym "BluesGod88" could be associated with Coe's name by way of a simple Google search and that he used the same pseudonym on child pornography websites.

¶ 14    Plaintiffs further alleged that Coe habitually engaged in inappropriate behavior such as permitting underage girls to sit on his lap, tickling them, and touching their buttocks. They alleged that Coe showed youth group members pornographic videos. Coe was often the only adult present during this inappropriate behavior, and he habitually isolated young girls. On June 14, 2013, in a middle school classroom in the basement of the church, Coe had sex with Jane on a couch. Jane was 15 and Coe 31.

¶ 15    Plaintiffs alleged that James was the direct supervisor of all FCCD employees and volunteers, that he was a mandatory reporter under the Abused and Neglected Child Reporting Act (325 ILCS 5/4 (West 2012)), and that he was aware or should have been aware of the Safe Church policy and UCC recommendations for minor-to-adult online relationships and communications. James was either trained to recognize the type of interactions between adults and children that create dangerous situations for the children or was not trained and should have been. James was present at the church during normal working hours and at youth group meetings from time to time such that he knew or should have known that Coe's interactions with youth, including Jane, were inappropriate. Plaintiffs made all of the same allegations regarding training and knowledge against FCCD.

¶ 16    Plaintiffs further alleged that FCCD employees, volunteers, and members were present to witness Coe's inappropriate attention, behavior, or physical contact with minor members of the youth group, including Jane. Multiple people found that behavior unsettling or received information from children in the group that the behavior made the children uncomfortable. Employees, volunteers, or members discussed among themselves Coe's inappropriate behavior with Jane. At least one employee, volunteer, or member confronted Coe about his behavior, and the behavior was reported to James in late 2012 and 2013. On at least three occasions, James walked into Coe's office while Coe was in the office alone with Jane and left them alone together, despite his knowledge that the Safe Church Policy directed that at least two adults be present with children. In June 2013, a vacation bible school volunteer, who was an early childhood education professional, recognized the interaction between Coe and Jane as inappropriate after witnessing them together for less than two days and called James to report the inappropriate conduct. She subsequently discussed the conduct again with James in a meeting. At no point did James take any action to further investigate, report to DCFS, communicate with Jane's parents, or restrict Coe's access to Jane or other children, nor did he implement the Safe Church Policy or any other policy to protect minors.

¶ 17    FCCD and James again moved to dismiss, and the circuit court dismissed all counts against them with prejudice. The circuit court found no reason to delay enforcement or appeal (Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)), and plaintiffs timely appealed. The appellate court affirmed in part, reversed in part, and remanded for further proceedings. 2018 IL App (2d) 170435, ¶ 108. It affirmed the circuit court's decisions to strike portions of the first amended complaint as well as its dismissal of the negligent retention counts against FCCD and James and the willful and wanton counts to the extent they overlapped with the negligent retention counts.

- 4 -

*Id.* ¶ 106. It reversed the circuit court's dismissal of the negligent hiring count against FCCD, the negligent supervision count against FCCD and James, and the willful and wanton counts to the extent they overlapped with the negligent supervision counts. *Id.*

¶ 18 FCCD and James petitioned for leave to appeal, asking that this court review the appellate court's decision to reverse the trial court in part. We granted leave. Ill. S. Ct. R. 315 (eff. Apr. 1, 2018). In their response to FCCD and James's brief, plaintiffs cross-appealed the appellate court's decision to affirm the trial court in part. Thus, all of the counts dismissed by the circuit court, as well as the stricken allegations, are before us. The Illinois Trial Lawyers Association sought, and we granted, leave to file an *amicus* brief. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 19                                                    ANALYSIS

¶ 20 The circuit court struck certain allegations from plaintiffs' first amended complaint and dismissed all counts against FCCD and James from the second amended complaint. Both actions were taken under section 2-615(a) of the Code (735 ILCS 5/2-615(a) (West 2014)). We review the grant of a motion pursuant to section 2-615 *de novo*. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006); see also *Department of Healthcare & Family Services ex rel. Daniels v. Beamon*, 2012 IL App (1st) 110541, ¶ 15 (citing *Marshall* and applying the standard to a motion to strike). In reviewing a motion granted pursuant to section 2-615, "we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. [Citation.] We also construe the allegations in the complaint in the light most favorable to the plaintiff." *Marshall*, 222 Ill. 2d at 429.

¶ 21 We first examine the stricken allegations before turning to the dismissed claims.

¶ 22                                            Stricken Allegations

¶ 23 The circuit court granted FCCD and James's motion to strike certain allegations in plaintiffs' first amended complaint as irrelevant or cumulative under section 2-615(a) of the Code (735 ILCS 5/2-615(a) (West 2014)). The appellate court affirmed. 2018 IL App (2d) 170435, ¶ 106.

¶ 24 A party may move to strike immaterial matter from a complaint. 735 ILCS 5/2-615(a) (West 2014). "[A] fact is 'relevant' if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *People v. Pawlaczyk*, 189 Ill. 2d 177, 193 (2000); see also Ill. R. Evid. 401 (eff. Jan. 1, 2011). Plaintiffs argue that the stricken allegations, including allegations of post-assault conduct by James and other FCCD employees, support their willful and wanton claims. They argue that the appellate court erred in finding the allegations "neutral on the question of whether those parties acted culpably prior to the alleged rape" (2018 IL App (2d) 170435, ¶ 58) because all allegations are construed in the light most favorable to plaintiffs.

¶ 25 In their motion to strike, FCCD and James challenged paragraphs 1 to 3, 25 to 35, 48 to 54, 74 to 83, 168 to 203, 208 to 224, 243, and 304 to 345. The circuit court granted the motion, and the appellate court affirmed (*id.* ¶ 106), noting that plaintiffs only challenged the dismissal of the post-assault allegations (*id.* ¶ 56).

¶ 26 On cross-appeal to this court, "Plaintiffs seek reversal of the blanket striking of allegations in the Amended Complaint, including the post-rape allegations, to the extent this Court determines that those allegations may be material to the Plaintiffs' causes of action against

James and FCCD." Other than mentioning that FCCD and James did not challenge paragraph 265 but did challenge paragraph 243, which alleged the same allegations against James, plaintiffs only discuss the post-assault facts in their cross-appeal. FCCD and James point out that, by failing to develop argument, plaintiffs forfeited any such argument. Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017). Plaintiffs respond that this court can grant any relief warranted by the record and request that we reverse the grant of the motion to strike in its entirety. Ill. S. Ct. R. 318(a) (eff. July 1, 2017). The appellate court found that plaintiffs had not argued for reversal of the entirety of the motion (2018 IL App (2d) 170435, ¶ 56), yet in their first brief to this court plaintiffs did not broaden their argument to address the other allegations. We find that plaintiffs forfeited review of stricken allegations other than the post-assault allegations. We decline to further consider them.

¶ 27     As to the post-assault allegations, plaintiffs argue that they demonstrate the aggravated nature of FCCD's and James's negligence necessary to plead their willful and wanton claims. They alleged, for example, that after Coe's arrest James called a meeting of church members, specifically excluding the Does; that James did not tell youth group parents at another meeting about an "indicated" Department of Children and Family Services (DCFS) report finding that Doe's allegation was substantiated; and that a sign-up sheet was posted in the church for members to attend Coe's trial to support him. Plaintiffs disagree with the appellate court's finding that the allegations were neutral on preassault culpability, correctly arguing that allegations are to be construed in the light most favorable to them, the nonmoving party. *Marshall*, 222 Ill. 2d at 422. The allegations do not, however, prove preassault culpability.

¶ 28     Plaintiffs argue that the post-assault allegations help establish that FCCD and James were either aware of Coe's inappropriate conduct before the assault or unqualified and unprepared to recognize and respond to such conduct. Plaintiffs cite *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 19, for the proposition that plaintiffs must support their willful and wanton claims with allegations of an "ongoing conscious disregard for Jane Doe's welfare." *Doe-3* does not mention any "ongoing" conscious disregard. The act at issue therein was not of an ongoing nature, nor did it occur after the acts that caused the injury. Rather, the act from which the duty arose—misstating the abuser's employment history—occurred before the abuser was hired. *Id.* ¶ 27.

¶ 29     FCCD's and James's post-assault actions do not support plaintiffs' claims of an ongoing conscious disregard for Jane's welfare or a pattern of conduct prior to the assault. That FCCD or James took certain actions or failed to take others after Coe assaulted Jane does not make it more likely or less likely that they acted negligently before the assault. We find that the allegations were properly stricken. We affirm the appellate court in affirming the circuit court's grant of the motion to strike.

¶ 30                    Dismissal of the Second Amended Complaint

¶ 31     Plaintiffs' second amended complaint was dismissed pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)). A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall*, 222 Ill. 2d at 429; *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 364 (2004). "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall*, 222 Ill. 2d at 429.

¶ 32    Illinois is a fact-pleading jurisdiction. *Id.*; *Weiss v. Waterhouse Securities, Inc.*, 208 Ill. 2d 439, 451 (2004). The plaintiff is not required to set forth evidence in the complaint but "must allege facts sufficient to bring a claim within a legally recognized cause of action (*Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997)), not simply conclusions (*Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 408 (1996))." *Marshall*, 222 Ill. 2d at 429-30.

¶ 33    Under a common-law negligence cause of action, an employer can be liable for an employee's torts in one of two ways, depending on whether the employee was acting within the scope of his employment. *Vancura v. Katris*, 238 Ill. 2d 352, 375 (2010). If the employee was within the scope of his employment, the employer can be found liable for his actions under a theory of vicarious liability, or *respondeat superior*. *Id.* If an employee acts outside the scope of his employment, however, the plaintiff can bring a direct cause of action against the employer for the employer's misconduct. *Id.* Negligent hiring, negligent supervision, and negligent retention are all direct causes of action against the employer for the employer's misconduct in failing to reasonably hire, supervise, or retain the employee.

¶ 34    Plaintiffs' claims against FCCD and James are common-law negligence claims. Willful and wanton conduct is regarded as an aggravated form of negligence. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 235 (2010). "To recover damages based upon negligence, a plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injury." *Id.* at 225. A plaintiff must allege and prove the same elements for a willful and wanton cause of action. *Id.* at 235-36.

¶ 35                                    *Defendants' Alleged Duty of Care*

¶ 36    We begin by determining whether FCCD, James, or both owed a duty of care to plaintiffs. "Whether a duty exists is a question of law to be determined by the court." *Doe v. McKay*, 183 Ill. 2d 272, 278 (1998). We first note that, "[w]here the law does not impose a duty, one will not generally be created by a defendant's rules or internal guidelines. Rather, it is the law which, in the end, must say what is legally required." *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 238 (1996). Self-imposed policies can exist coextensively with the law. See, *e.g.*, *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 46 ("Hazing is not only against the law in Illinois, it is against the university's rules as well as the Pi Kappa Alpha fraternity's rules."). Penalizing a defendant by imposing a duty on it to comply with self-imposed safety measures that exceed any duty imposed by law, however, would discourage employers from creating policies intended to protect their employees and the public. We decline to do so. Neither the Safe Church Policy nor any other policy or procedure created or adopted by FCCD creates any duty beyond that already imposed by the law. To the extent that FCCD and James developed or adopted the Safe Church Policy or any other measure as a means of fulfilling their existing duties, any failure to comply would be relevant to breach, not to the existence of a duty.

¶ 37    "We have long recognized that ' "every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or proximity of relationship ***." ' " *Id.* ¶ 22 (quoting *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 19, quoting *Widlowski v. Durkee Foods*, 138 Ill. 2d 369, 373 (1990)). "In

deciding whether a duty exists in a particular case, a court will consider the foreseeability of the plaintiff's injury, the likelihood of the occurrence, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant." *McKay*, 183 Ill. 2d at 278. Employers have a duty to act reasonably in hiring and retaining employees. *Van Horne v. Muller*, 185 Ill. 2d 299, 310 (1998). A master also has a duty to supervise his servant. *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 229 (2000). In other words, the initiation and existence of an employment relationship imposes a duty upon the employer to exercise reasonable care in employing only competent individuals. These duties are to all foreseeable individuals who might be impacted by the employee or his employment, such as a customer of a defendant business or a member of a defendant church.

¶ 38 Certainly it is foreseeable and likely that a youth group member could be harmed by a failure to act reasonably in hiring, supervising, and retaining a director of youth ministries. The magnitude of the burden of guarding against the harm alleged here is small, as reasonably hiring, supervising, and retaining employees are duties that benefit the employer even apart from preventing potential harm to third parties. The burden seems even smaller when compared with the magnitude of the harm to be prevented. Finally, the consequences of placing the burden on the defendant are small; employers typically already strive to perform these duties in a reasonable manner. To the extent that plaintiffs have pled and can prove that FCCD, James, or both hired, supervised, and retained Coe, we find that they had a duty to plaintiffs to do so reasonably.

¶ 39 Plaintiffs have alleged five causes of action against FCCD and four of the same counts against James. We examine them separately.

¶ 40 *Count XII—Negligent Hiring*

¶ 41 Plaintiffs alleged that FCCD was negligent when it hired Coe. They initially alleged this count against both parties, but after learning that Coe was hired before James, they did not replead it against James. The appellate court reinstated the claim against FCCD after the circuit court dismissed it. 2018 IL App (2d) 170435, ¶ 106. In a negligent hiring action, a plaintiff must

> "plead and prove (1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury." *Van Horne*, 185 Ill. 2d at 311.

¶ 42 At issue is whether FCCD knew or should have known at the time it hired Coe that he had a sexual interest in children. Plaintiffs alleged that FCCD failed to conduct a background check. They further alleged that a simple Google search of Coe's name would have revealed his pseudonym, BluesGod88, and that he used that pseudonym on certain adult and child pornography websites, including to post obscene photos of himself. Plaintiffs did not allege that Coe had a criminal record or any known or discoverable illicit relationships with children.

¶ 43 FCCD responds to plaintiffs' allegations by stating that the allegations are insufficient; plaintiffs must allege not only that no background check was performed but also what a background check would have uncovered. It states that an inference that a Google search of

someone's name would reveal that person's history of visiting pornographic websites is implausible.

¶ 44 At the pleading stage, all inferences are drawn in plaintiffs' favor. *Marshall*, 222 Ill. 2d at 429. To prove a negligent hiring claim, a plaintiff must show not just that an employee was unfit but that the employee was unfit in a particular manner, which particular unfitness "must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position." *Van Horne*, 185 Ill. 2d at 313. Plaintiffs allege that "[a] basic, cursory Google search into the online public presence of Coe would have revealed Coe's activity, which included posting public photos of his own genitalia, on numerous pornographic websites." They maintain that they have evidence that such a Google search at or before Coe's hire would have alerted FCCD to Coe's visits to child pornography websites and thus put it on notice of Coe's particular unfitness—his sexual interest in children—that later proximately caused plaintiffs' injuries.

¶ 45 At the pleading stage, we will not guess what the evidence will show. Rather, we need only determine whether "it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall*, 222 Ill. 2d at 429. We acknowledge FCCD's argument that a background check is unlikely to produce an individual's Internet browsing history, but that is a factual dispute. Myriad businesses offer to perform detailed background checks for employers and youth activity sponsors, and plaintiffs will have to carry their burden in proving their claim.

¶ 46 Plaintiffs have alleged that a background check, by way of a cursory Google search, would have put FCCD on notice of Coe's sexual interest in children at or before his hire. This is a factual allegation and more than a mere conclusion. Coe's sexual interest in children is the particular unfitness alleged to have proximately caused plaintiffs' injuries. Thus, if proven, these facts might entitle plaintiffs to recovery. We affirm the appellate court in reinstating count XII.

¶ 47 *Counts VIII and XIII—Negligent Supervision*

¶ 48 Plaintiffs alleged that, after hiring Coe, both FCCD and James negligently supervised him. The appellate court reinstated the claim after the circuit court dismissed it. 2018 IL App (2d) 170435, ¶ 106.

¶ 49 The parties disagree as to what the elements of a negligent supervision cause of action are. This court set out the elements of negligent hiring and negligent retention in *Van Horne*, 185 Ill. 2d at 311. This court did not, however, set out the elements for a negligent supervision claim in that decision. See *Vancura*, 238 Ill. 2d at 371-72 (noting that in *Van Horne* this court focused on negligent hiring and retention, not negligent supervision).

¶ 50 Plaintiffs argue that this court set out the elements of a negligent supervision claim in *Vancura*: "As in any claim for negligence, a plaintiff must establish the existence of a duty, a breach of the duty, and an injury to the plaintiff that was proximately caused by the breach." 238 Ill. 2d at 375 (citing *Hills*, 195 Ill. 2d at 228). As the quote states, however, these are merely the general elements of a negligence claim.

¶ 51 FCCD and James argue that it would be nonsensical for this court to require notice of the employee's particular unfitness in a negligent hiring and a negligent retention claim but not in a negligent supervision claim. They argue that prior notice of a particular unfitness is required

in a negligent supervision action outside the employment context, citing *Norskog v. Pfiel*, 197 Ill. 2d 60, 84 (2001) (holding that a plaintiff must show that a parent was "aware of specific instances of prior conduct sufficient to put them on notice that the act complained of (in [that] case, [a] murder) was likely to occur").

¶ 52    Appellate court panels have differed as to the elements of negligent supervision. The appellate court below held that the elements of a negligent supervision claim are that "(1) the defendant had a duty to supervise the harming party, (2) the defendant negligently supervised the harming party, and (3) such negligence proximately caused the plaintiff's injuries." 2018 IL App (2d) 170435, ¶ 90; see also *Hills v. Bridgeview Little League Ass'n*, 306 Ill. App. 3d 13, 18 (1999), *rev'd*, 195 Ill. 2d 210; *Van Horne v. Muller*, 294 Ill. App. 3d 649, 657 (1998), *rev'd in part on other grounds*, 185 Ill. 2d 299; *Mueller v. Community Consolidated School District 54*, 287 Ill. App. 3d 337, 342-43 (1997).

¶ 53    Other panels, however, have held that notice is required. See, *e.g.*, *Doe v. Brouillette*, 389 Ill. App. 3d 595, 606 (2009); *Vancura v. Katris*, 391 Ill. App. 3d 350, 366 (2008), *aff'd in part, rev'd in part*, 238 Ill. 2d 352.

¶ 54    Still others have held that this court has not distinguished the tort of negligent supervision from negligent retention. See, *e.g.*, *Helfers-Beitz v. Degelman*, 406 Ill. App. 3d 264, 268 (2010); *Zahl v. Krupa*, 399 Ill. App. 3d 993, 1018 (2010); *Platson v. NSM, America, Inc.*, 322 Ill. App. 3d 138, 144 (2001).

¶ 55    We first note that, while we have not before determined the elements, we have acknowledged that a separate and distinct cause of action for negligent supervision exists. See *Vancura*, 238 Ill. 2d at 375 (noting that a plaintiff can assert a negligent supervision claim based on a particular duty or a general duty based on the employment relationship).

¶ 56    FCCD and James's reliance on *Norskog*, 197 Ill. 2d at 84, is misplaced. A parent-child relationship is much different from an employer-employee relationship, and one's duty to reasonably supervise one's child is not the same as one's duty to reasonably supervise one's employee. Compare Restatement (Second) of Torts § 316 (1965), with *id.* § 317. Thus in *Norskog* we required that, among other things, a parent have knowledge of the child's previous conduct before a duty to control the child may arise. 197 Ill. 2d at 84.

¶ 57    Similarly, in an employment or master-servant context, a duty to reasonably control the servant can exist, which duty requires that the master " 'knows or should know of the necessity and opportunity for exercising such control.' " *Hills*, 195 Ill. 2d at 229 (quoting Restatement (Second) of Torts § 317(a)(ii) (1965)). A duty of a master or employer to control her agent can arise when the employer has reason to know or suspect that a certain employee or employees will engage in potentially dangerous or tortious conduct if they are not prohibited from doing so.

¶ 58    An employer's duty to supervise, in contrast, is general in nature. An employer has a duty to supervise all employees; the extent to which she must do so depends on many factors, such as the work performed, the employees performing it, the size of the business, the type of work, and the employer's clientele, among others. These duties are closely related and often overlap, but a distinction exists. This court's analysis in *Hills* provides a good example of the difference. *Id.* at 229-34.

¶ 59    In that case, this court examined whether Bridgeview Little League Association (Bridgeview) was negligent in failing to control its coaches, who physically assaulted another

coach. *Id.* at 229-30. In doing so, the court considered whether the head coach was the master of the assistant coaches. *Id.* at 230-34. At trial, two Bridgeview board members testified that the head coach "had general supervisory authority over his players and coaches." *Id.* at 232. That authority included the responsibility to make sure that players and coaches engaged in good sportsmanship and followed the behavioral rules. *Id.* Although not expressly discussed in that decision, this describes the head coach's duty to supervise. Similarly, an employer has a duty to generally supervise her employees to make sure that they engage in appropriate behavior and follow the law and the employer's rules.

¶ 60    Because the head coach was entrusted with the authority to generally supervise, the court found that he could be considered "master" for purposes of establishing the notice and ability to control required for a duty to control. *Id.* at 232-33. Thus, although not explicitly stated, the court found that the head coach's duty to generally supervise the assistant coaches and players was a precursor to a determination that he could have had a duty to control the assistant coaches when they acted in a particular way and attacked another coach.

¶ 61    Regarding the negligent supervision count, we agree with the elements laid out by the appellate court below. We do not require that the supervisor have prior notice of a particular unfitness because reasonable performance of the duty to supervise will put the supervisor on notice of an employee's conduct or perhaps prevent the employee's tortious conduct all together. Rather, we agree with the appellate court that, to impose a duty to supervise, only general foreseeability is required in an employment context. 2018 IL App (2d) 170435, ¶ 99. Although prior notice might sometimes be a factor in determining whether a supervisor reasonably performed her duty, to always require prior notice of the particular unfitness as an element of the duty analysis would be to extinguish this cause of action in many circumstances. In this case, for example, no amount of supervision could suffice if FCCD and James were aware of Coe's sexual interest in children, and the claim would therefore become a negligent retention claim. We decline to limit the negligent supervision cause of action in this way.

¶ 62    As the appellate court recognized, it is generally foreseeable that abuse could occur in programs providing adults with unsupervised access to children. *Id.* This state's public policy strongly favors the protection of children (*id.* (citing *Doe-3*, 2012 IL 112479, ¶ 36)), especially from sex offenders (*id.* (citing *Doe-3*, 2012 IL 112479, ¶ 37)). FCCD's and James's duty to reasonably supervise Coe, predicated on the employment relationship and this general foreseeability, is sufficient to confer constructive knowledge of Coe's actions, assuming plaintiffs can prove their allegations.

¶ 63    Plaintiffs alleged that FCCD and James failed to monitor Coe's interactions with FCCD's youth and confirmation groups. *Id.* ¶ 92. They alleged, for example, that Coe was often the only adult present for youth group meetings, which allowed him to engage in inappropriate and unlawful conduct during those meetings. They alleged that James observed Jane alone with Coe in his office on at least three occasions and allowed them to remain alone together. Whether plaintiffs' allegations are sufficient to prove a breach is a question of fact. We do not, at this stage, determine whether negligence has been proven but merely whether facts have been alleged that, if proven, could entitle plaintiffs to recovery. *Marshall*, 222 Ill. 2d at 429.

¶ 64    We find that plaintiffs have alleged facts sufficient that the fact-finder could find that FCCD and James breached their duty to supervise Coe by failing to monitor his conduct and that the breach proximately caused their injuries. This is sufficient at this stage. We affirm the

appellate court in reversing the circuit court's dismissal of counts VIII and XIII.

¶ 65                             *Counts IX and XIV—Negligent Retention*

¶ 66        Plaintiffs alleged that both FCCD and James negligently retained Coe. The appellate court affirmed the circuit court's dismissal of the negligent retention counts. 2018 IL App (2d) 170435, ¶ 106. The elements for a claim of negligent retention are the same as for negligent hiring. Plaintiffs must

> "plead and prove (1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury." *Van Horne*, 185 Ill. 2d at 311.

Also like a negligent hiring claim, a plaintiff must show that the employee was unfit in a particular manner, which particular unfitness "must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position." *Id.* at 313.

¶ 67        The appellate court found that James was not Coe's employer and thus could not be held liable for negligent retention. We disagree. The decision on which the appellate court below relied found that no employment relationship existed between the Boy Scouts of America (BSA) and a district executive of the local area boy scout council. *Doe v. Boy Scouts of America*, 2014 IL App (2d) 130121, ¶ 40. That court so decided, however, after examining several factors and determining that " '[w]hile no one single factor is considered determinative, the right to control the work is considered to be the predominant factor.' " *Id.* (quoting *Brouillette*, 389 Ill. App. 3d at 606). "[I]t is the right to control rather than the actual exercise of control that is significant." *Brouillette*, 389 Ill. App. 3d at 606. The *Boy Scouts of America* court found that this "most significant factor" weighed heavily against finding an employment relationship with BSA because the abuser reported to the local organization, not BSA. 2014 IL App (2d) 130121, ¶ 40. In this case, conversely, plaintiffs have alleged that Coe reported directly to James and that James "was the master and direct supervisor of Coe."

¶ 68        This court has considered similar factors. In *Hills*, we noted that the master-servant relationship is not one that is exactly defined and "is generally left to the trier of fact to determine whether the relationship exists." 195 Ill. 2d at 235.

> " 'The question as to whether or not the relationship of master and servant exists is dependent upon certain facts and circumstances. These facts include the question of hiring, the right to discharge, the manner of direction of the servant, the right to terminate the relationship, and the character of the supervision of the work done. Unless these facts clearly appear, the relationship cannot become purely a question of law.' " *Id.* (quoting *Merlo v. Public Service Co.*, 381 Ill. 300, 319-20 (1942)).

¶ 69        Those facts do not clearly appear in James's favor. Plaintiffs have alleged, for example, that Coe was under James's direct supervision and control. As above, we merely determine at this stage whether facts have been alleged that, if proven, could entitle plaintiffs to recovery. *Marshall*, 222 Ill. 2d at 429. We find that plaintiffs have sufficiently pled facts from which a trier of fact could conclude that James had the ability to control Coe's employment.

¶ 70        Like the negligent hiring count above, the issue here is whether FCCD and James had notice of Coe's sexual interest in children. The appellate court below found that "[i]n all 70

pages of their complaint, plaintiffs failed to allege (1) specific misconduct that (2) was observed by FCCD's agents and (3) was of a nature that placed FCCD on notice of Coe's particular unfitness for the position of youth director." 2018 IL App (2d) 170435, ¶ 87.

¶ 71        We find the facts of this case, as alleged, closely matched on this count. We recognize that an employer must "deal justly with its employees and not take lightly the decision to terminate." *Boy Scouts of America*, 2014 IL App (2d) 130121, ¶ 48. In that case, a scout's mother brought an action against BSA and the local boy scout organization alleging negligent hiring and retention after her son was sexually abused by a local district executive. *Id.* ¶¶ 1-7. That court held that, even with the boy scouts organization's "appropriately heightened sensitivity to danger," the abuser's conduct of allegedly positioning himself so as to watch a boys' swim team change in a locker room "was not so clearly prurient, and did not signal such an immediate danger to scouts, as to warrant depriving him of any opportunity to explain himself." *Id.* ¶ 48. Notably, however, that case was on appeal after a grant of summary judgment (*id.* ¶ 1), which is granted and reviewed on a standard less favorable to the plaintiff than a section 2-615 dismissal (*id.* ¶ 34).

¶ 72        Plaintiffs argue that they are not required to set out evidence in their complaint but only the ultimate facts to be proved. *Beretta*, 213 Ill. 2d at 369. They argue that requiring plaintiffs to plead evidentiary facts sufficient to show knowledge would raise the bar and benefit defendants who "circle the wagons." They argue that they are not required to allege facts that are much more within the defendants' knowledge, citing *Marshall v. David's Food Store*, 161 Ill. App. 3d 499, 501 (1987).

¶ 73        In that case, a plaintiff who was accosted in the parking lot of a grocery store and sexually assaulted sued the grocery store and the security company hired by the grocery store. *Id.* at 500. Defendants successfully moved to dismiss, arguing that the plaintiff had failed to plead that they had notice that the area was dangerous. *Id.* The appellate court reversed, finding that the grocery store's act of hiring a security company gave rise to an inference that the defendants had notice of potential danger in the parking lot. *Id.* at 501. That court also found that the plaintiff did not have to "allege facts which, to a much greater degree of exactitude, are more within the knowledge of a defendant" and that discovery might produce more evidence of the defendants' knowledge. *Id.*

¶ 74        Here, plaintiffs have alleged certain facts of which, they further alleged, FCCD and James were or should have been aware. They alleged, for example, that Coe had physical contact with underage girls at youth group and other activities, including touching their buttocks. Although they alleged that Coe was "many of the times *** the only adult present," they later alleged that FCCD employees, members, or volunteers, including James, were present for at least some of these activities. They alleged that an early childhood professional reported to James certain interactions between Coe and Jane that she believed to be sufficiently inappropriate to be worthy of a phone call to James and discussion in a subsequent meeting. This allegation reasonably implies that Coe's actions toward Jane, even when he was in front of other adults, were sufficiently indicative of his sexual interest in her such that a reasonably prudent person, trained to recognize such an interest, would have noticed. They alleged that James and other FCCD employees and volunteers were or should have been so trained.

¶ 75        Under the standard upon which we review these allegations, "we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. [Citation.] We

also construe the allegations in the complaint in the light most favorable to the plaintiff." *Marshall*, 222 Ill. 2d at 429. "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Id.* Plaintiffs have alleged that Coe engaged in conduct with underage girls that a reasonably prudent person might consider, especially cumulatively, to be inappropriate or sexual in nature. They have also alleged that FCCD and James had constructive or actual knowledge by way of witnessing the conduct or receiving reports from volunteers who witnessed it, which, they further alleged, was sufficient to put them on notice of Coe's sexual interest in children. Accepting those well-pled allegations as true, we cannot say that no set of facts can be proved that would entitle plaintiffs to recovery.

¶ 76 This case is at the pleading stage, and we thus accept as true the allegations that plaintiffs will have to carry their burden in proving. Should they prove them, they may be entitled to recovery. We reverse the appellate court and reinstate counts IX and XIV.

¶ 77 *Counts X, XI, XV, and XVI—the Willful and Wanton Counts*

¶ 78 No separate and distinct tort exists for willful and wanton conduct. *Krywin*, 238 Ill. 2d at 235. Rather, willful and wanton conduct is regarded as an aggravated form of negligence. *Id.* A plaintiff must allege and prove the same elements for a willful and wanton cause of action as she does for a negligence action. *Id.* at 235-36.

¶ 79 The appellate court below found that plaintiffs "alleged willful-and-wanton conduct against FCCD and James" and that the counts therefore "overlap[ped] in part with the negligence counts against FCCD and James." 2018 IL App (2d) 170435, ¶ 104. The appellate court did not reinstate the willful and wanton counts inasmuch as they overlapped with the negligent hiring count. On appeal to this court, plaintiffs do not claim that the appellate court erred in failing to do so, despite addressing the overlap with the negligent supervision and negligent retention counts. Thus, either they agree that the willful and wanton counts do not overlap with the negligent hiring count or they have forfeited such an argument.

¶ 80 For the reasons stated above, we affirm the appellate court in reinstating the willful and wanton counts inasmuch as they overlap with the negligent supervision counts and reverse dismissal inasmuch as they overlap with the negligent retention counts.

¶ 81 CONCLUSION

¶ 82 In sum, we affirm the appellate court in affirming the circuit court's grant of the motion to strike portions of the plaintiffs' complaint. We also affirm the appellate court in reinstating the negligent hiring and negligent supervision counts and reverse the appellate court in affirming dismissal of the negligent retention counts. We affirm as to reinstating the willful and wanton counts inasmuch as they overlap with the negligent supervision counts and reverse inasmuch as they overlap with the negligent retention counts. As a result of our decision, the allegations stricken by the circuit court remain stricken, but all counts against FCCD and James are reinstated.

¶ 83        Appellate court judgment affirmed in part and reversed in part.

¶ 84        Circuit court judgment affirmed in part and reversed in part.

¶ 85        Cause remanded.

¶ 86        CHIEF JUSTICE KARMEIER took no part in the consideration or decision of this case.