2023 IL App (1st) 230852-U

FOURTH DIVISION
Order filed: November 2, 2023

No. 1-23-0852

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| KATHERINE McDERMOTT, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 20 L 5642 |
| CORTEZ PETERS and THE UNIVERSITY OF | ) | |
| CHICAGO MEDICAL CENTER, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Patricia O'Brien Sheahan, |
| (The University of Chicago Medical Center, Defendant- | ) | Catherine A. Schneider, |
| Appellee). | ) | Judges, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Hospital did not have a duty to warn a non-agent independent contractor EMT of a patient's violent criminal record, and the EMT's negligence claim against the hospital for failing to properly restrain the patient was medical in nature.

¶ 2    Catherine McDermott, an emergency medical technician (EMT) who was battered by

Cortez Peters, a patient under the care of The University of Chicago Medical Center (UCMC),

appeals from the dismissal of her negligence claim against UCMC. She contends that the circuit court committed several errors over the course of a series of orders concerning UCMC's duty of care, the nature of her claim as one sounding in medical negligence rather than ordinary common-law negligence, and her request for leave to subpoena Peters' medical records. We see no merit to any of her arguments and affirm the dismissal of her claim against UCMC.

¶ 3    In her initial complaint, McDermott raised two claims for relief, one against Peters for battery, and one against UCMC for negligence. Peters has not appeared or otherwise defended against McDermott's suit, and a default has been entered against him. McDermott's claim against Peters is not at issue in this appeal.

¶ 4    In her claim against UCMC, McDermott alleged that Peters was a psychiatric patient at one of UCMC's hospitals and had a criminal history of aggravated battery, domestic battery, and violations of orders of protection. McDermott further alleged that on June 10, 2019, UCMC contracted with her employer, Medical Express Ambulance Service, Inc. (Medical Express), to transport Peters from one hospital to another and that UCMC employees "prepared Cortez Peters for medical transport *** by securing him to the stretcher with restraints." According to McDermott, Peters "broke free from the restraints and repeatedly struck *** [her] about her head and body with closed fists while in the ambulance." McDermott claimed that UCMC was negligent in multiple ways, including, in relevant part, for failing to notify Medical Express of Peters' "criminal history and hostility and aggressive behavior towards females," and for failing "to properly apply the restraints to the stretcher to prevent Cortez Peters from posing a danger" to her.

¶ 5    UCMC filed a motion to dismiss McDermott's complaint under sections 2-615 and 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619(a)(9) (West 2020)),

asserting that it did not owe McDermott a duty, a necessary component of her negligence claim, and that McDermott had failed to comply with section 2-622 of the Code (735 ILCS 5/2-622 (West 2020)), which requires the plaintiff to file an affidavit and a report from a reviewing physician attesting to the merits of a medical negligence claim.

¶ 6    McDermott responded to the motion by citing section 471 of the Restatement (Second) of Agency (Restatement (Second) of Agency § 471 (1958)) for the proposition that a principal has a duty to warn an agent of an unreasonable risk involved in the employment. Although McDermott conceded that she was not an agent of UCMC, she argued that the principle still applied in this case and that UCMC, which had hired her employer to transport Peters, had a duty to warn her employer of the danger posed by Peters.

¶ 7    In an order entered on December 30, 2020, the court agreed with McDermott that the rationale of section 471 applied, finding that "it would be absurd if UCMC would have been required to warn an EMT of a patient's violent tendencies if the EMT's employment happened to fall under the UCMC umbrella, but not otherwise."

¶ 8    Regarding UCMC's argument that McDermott was required to file a section 2-622 report, the court found that McDermott was not required to file such a report because her claim against UCMC sounded in ordinary negligence rather than medical negligence. According to the court, "UCMC has not asserted that Mr. Peters' mental health problems afford him different physical capabilities than that of an average man of his build." Accordingly, the court reasoned, a jury would not need to hear medical expert testimony and it would be within the ken of a lay juror to consider McDermott's claim against UCMC. Based on those findings, the court denied UCMC's

motion to dismiss and allowed McDermott to file an amended complaint omitting two of her allegations against UCMC and modifying one other.

¶ 9     After McDermott filed her amended complaint on February 16, 2021, UCMC requested an extension of time in which to file an answer until after Peters consented to or waived disclosure of his medical records, asserting that it could not properly respond to McDermott's allegations without discussing those records.

¶ 10     On March 5, 2021, the court issued an order in which it declined to rule on UCMC's request for an extension and instead *sua sponte* decided to "revisit" its December 30, 2020, order, and specifically its ruling that McDermott's failure-to-restrain claim sounded in ordinary negligence. The court observed that, "as set forth in decisions not previously cited to by UCMC," the decision of whether to restrain a hospital patient "involves medical judgment that is not within the ken of the average lay juror." Accordingly, the court concluded that McDermott's failure-to-restrain negligence claim was medical in nature and, therefore, required compliance with the healing arts malpractice procedures set forth in section 2-622. As a result, the court "vacat[ed] the portion of its December 30, 2020 opinion addressing the necessity of plaintiff's submission of a physician's report" and ordered McDermott to file a section 2-622 report. McDermott filed a motion for reconsideration, which the court denied.

¶ 11     Prior to filing her section 2-622 report, on June 21, 2021, McDermott filed a motion for leave to subpoena Peters' medical records. McDermott asserted that Peters' records were necessary to allow a reviewing physician to prepare a section 2-622 report. The court denied McDermott's request, finding it "premature and unnecessary." The court observed that McDermott apparently already had enough information to be able to allege in her amended complaint that Peters was a

psychiatric patient under UCMC's care, had a violent criminal history, and had been restrained by UCMC personnel prior to being placed in McDermott's ambulance. Accordingly, the court reasoned, McDermott had sufficient information to prepare a section 2-622 report and did not need Peters' private medical records at that time. On December 29, 2021, McDermott filed her section 2-622 report.

¶ 12    On January 26, 2022, UCMC filed another motion to dismiss pursuant to section 2-615. UCMC argued that McDermott was unable to state a claim against it for medical negligence because it did not owe her any duty as a third-party non-patient. McDermott responded that the court had already determined in its December 30, 2020, order that UCMC owed her a duty and that nothing had changed since that ruling.

¶ 13    In an order entered on May 3, 2022, the court rejected McDermott's arguments and granted UCMC's motion to dismiss McDermott's claim against it. The court reasoned that its prior decision in its December 30, 2020, order that UCMC owed a duty to McDermott had been vacated in its March 5, 2021, order and that, when viewing the claim within the legal framework of medical negligence rather than ordinary negligence, UCMC did not owe a duty to McDermott because she was not a patient of the hospital and did not otherwise occupy a special relationship with the hospital.

¶ 14    McDermott appealed the court's ruling, and that appeal was dismissed for want of jurisdiction. On April 14, 2023, the circuit court amended its May 3, 2022, order to add a Supreme Court Rule 304(a) finding that there was no just reason to delay appeal. This appeal now follows.

¶ 15    McDermott raises three issues on appeal, arguing (1) that UCMC had a duty to warn her of the threat posed by Peters because she was "akin to" an agent of UCMC, (2) that her negligence

claim against UCMC relating to the failure to restrain Peters was one of ordinary negligence rather than medical negligence, and (3) that she should have been allowed to subpoena Peters' medical records because of their relevance to her claim against UCMC. We see no merit to the first two issues, and the third issue is moot.

¶ 16    First, McDermott argues that the circuit court erred in determining that UCMC did not have a duty to warn her of the threat posed by Peters and that the court's initial ruling on December 30, 2020, in her favor became the law of the case and could not be reversed. We disagree with her on both points.

¶ 17    We can first dispense with the notion that the court's initial ruling denying UCMC's first motion to dismiss on the grounds that UCMC's relationship with McDermott created a duty to warn became the law of the case. In order for a ruling to become the law of the case, it must be a final judgment. *People v. Patterson*, 154 Ill. 2d 414, 469 (1992). An order denying a motion to dismiss is an interlocutory order that is subject to modification. *City of Chicago v. Piotrowski*, 215 Ill. App. 3d 829, 833 (1991). It is not a final adjudication of the rights and liabilities of the party. *Id.* Rather, a controversy still exists. *Id.* So, while we agree with McDermott that in its March 5, 2021, order the circuit court did not vacate the portion of its December 30, 2020, order concerning UCMC's duty to warn, the court's ruling on that issue in the context of the denial of UCMC's motion to dismiss McDermott's initial complaint was not a final adjudication of that issue and it remained modifiable. The court was, therefore, within its power to reverse course on that matter in its May 3, 2022, order granting UCMC's motion to dismiss McDermott's amended complaint. The court's December 30, 2020, ruling did not become the law of the case.

¶ 18    As for the merits of McDermott's duty-to-warn claim, we agree with UCMC that McDermott and UCMC did not have the requisite relationship for such a duty to attach. "To state a cause of action for negligence, a plaintiff must establish that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the plaintiff incurred injuries proximately caused by the breach." *Chandler v. Illinois Central Railroad Co.*, 207 Ill. 2d 331, 340 (2003). "Whether a duty exists is a question of law to be determined by the court." *Doe v. McKay*, 183 Ill. 2d 272, 278 (1998).

¶ 19    The court in this case decided the issue on a motion to dismiss filed pursuant to section 2-615 of the Code. Such a motion "challenges the legal sufficiency of a complaint based on defects apparent on its face." *Doe v. Coe*, 2019 IL 123521, ¶ 31. "In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. (Citation.) We also construe the allegations in the complaint in the light most favorable to the plaintiff. (Citation.) Thus, a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. (Citations.)" *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). We review an order granting a section 2-615 motion to dismiss *de novo*. *Id.*

¶ 20    McDermott contends that UCMC's duty in this case arose as a consequence of its hiring of her employer to transport Peters and its knowledge of his criminal history. "Under common law, the universally accepted rule *** is that a private person has no duty to act affirmatively to protect another from criminal attack by a third person absent a 'special relationship' between the parties." *Iseberg v. Gross*, 227 Ill. 2d 78, 87 (2007). Historically, there have been four "special relationships," namely common carrier-passenger, innkeeper-guest, business invitor-invitee, and

voluntary custodian-protectee. *Id.* "The existence of one of these four 'special relationships' has typically been the basis for imposing an affirmative duty to act where one would not ordinarily exist." *Id.*

¶ 21    McDermott argues that in this case UCMC is not a "private person" but rather an employer and effectively her principal, implicating a different scenario in which a duty to warn might exist. Specifically, McDermott points to section 471 of the Restatement (Second) of Agency, which provides that "[a] principal is subject to liability in an action of tort for failing to use care to warn an agent of an unreasonable risk involved in the employment, if the principal should realize that it exists and that the agent is likely not to become aware of it, thereby suffering harm." Restatement (Second) of Agency § 471 (1958). Comment *a* explains the rule's rationale:

> "One who is requested or directed by another to act on his account has reason to believe that the other will give him information of the risks to be encountered of which the other knows and which he should realize are unknown to the one so requested to act. Further, if the one making the request is in a better position to know of the risks to be encountered, the one of whom the request is made may reasonably believe that he will be informed of facts which the other, because of his position, should know. From this it follows that a principal requesting or directing an agent to act is under a duty to disclose to the agent the risks which he knows or should know are likely to be encountered by the agent and of which, as he should realize, the agent is unaware." Restatement (Second) of Agency § 471, Comment *a*, (1958).

¶ 22    However, the simple fact remains that McDermott was not an agent of UCMC. Rather, she admits that "there is no argument to be made that Medical Express and this Plaintiff are anything

other than independent contractors in relation to UCMC." And, indeed, caselaw applying section 471 has distinguished agents from independent contractors. See *Petersen v. U.S. Reduction Co.*, 267 Ill. App. 3d 775, 783 (1994). That fact notwithstanding, McDermott argues that "the nature of this particular relationship is akin to that of a principal-agent in the context of section 471" and that the principles of section 471 should still apply.

¶ 23     However, she does not identify any authority imposing a duty to warn when a relationship is "akin to that of a principal-agent," a relationship that seems to really mean anytime someone is contracted or hired to perform a job. McDermott asks that we extend the "universally accepted" rule that there is no duty to protect a third party absent a "special relationship" to include non-agents with whom one conducts business. We will not do so. Under the well-settled law regarding the duty to protect third parties, UCMC had no legal duty to protect a non-employee, non-agent independent contractor like McDermott. The circuit court, therefore, did not err in finding no duty to warn.

¶ 24     In her second issue, McDermott asserts that the circuit court erred in determining that her claim regarding UCMC's failure to restrain Peters sounded in medical negligence rather than ordinary negligence. In doing so, she acknowledges that "[w]hether a hospital patient should be restrained involves the exercise of medical judgment." *Heastie v. Roberts*, 226 Ill. 2d 515, 552–53 (2007) (citing *Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d 92, 100 (2003)). And, indeed, McDermott does not raise any issue with the decision to restrain Peters. Rather, she contends that the mechanical application of the ordered restraints "is not an implicit part of the medical decision to restrain a patient, is not beyond the ken of the average juror and therefore a physician's affidavit

pursuant to section 2-622 is not required." She argues that a failure to properly apply restraints sounds in ordinary negligence. Again, we disagree.

¶ 25    The determination of whether a negligence claim is medical in nature, also referred to as "healing arts malpractice," does not depend merely on whether expert testimony is required to assist the jury. *Woodard v. Krans*, 234 Ill. App. 3d 690, 704 (1992) ("[A] section 2-622 affidavit may not be dispensed with simply because the defendant's alleged negligence may be proved without expert testimony."). Indeed, this court has explained that "there are three types of negligence suits against providers of medical services: (1) malpractice suits requiring expert testimony; (2) malpractice cases not requiring expert testimony; and (3) negligence suits, essentially common-law in character, that happen to be directed against health care providers." *Id.* at 705. "[O]nly the last of these three does not require a plaintiff to follow section 2-622." *Id.* Stated differently, "the possibility that the standard of care may be established by lay knowledge does not necessarily take a case outside the broad realm of medical, hospital or healing art malpractice. Where determining the standard of care requires applying distinctively medical knowledge or principles, however basic, the plaintiff must comply with section 2-622." *Id.* at 705–06.

¶ 26    The conduct at issue in this case is in the "broad realm of medical, hospital[,] or healing art malpractice." Indeed, "it has been frequently held in this state and others that the standard of care where an injury allegedly results from a hospital's failure to provide adequate restraints *** can be established only upon expert medical testimony. Consequently, these cases are treated as medical malpractice actions subject to statutory restrictions for healing art malpractice."

*Kolanowski v. Illinois Valley Community Hospital*, 188 Ill. App. 3d 821, 824 (1989) (collecting cases).

¶ 27    Although McDermott contends that the mechanical application of restraints is of a different character than the admittedly medical decisions concerning whether to restrain a patient and what type of restraint to use, she again does not cite any authority establishing such a rule. She cites *Heastie* for the proposition that a lay juror "can readily understand the improper application of restraints" (*Heastie,* 226 Ill. 2d at 555), but that case did not hold that the failure to properly apply restraints was not medical in nature. Rather, its discussion of that issue focused on a juror's ability to appreciate that failing to properly restrain a patient poses risks, especially when the patient has not been searched for contraband. *Id.*

¶ 28    Conversely, as discussed in *Kolanowski*, "the proper levels of supervision and restraint *** [are] determined by the plaintiff's medical condition and therefore involve[] medical judgments." *Kolanowski*, 188 Ill. App. 3d at 825; see also *Washington Hospital Center v. Martin*, 454 A.2d 306, 308 (D.C. 1982) (observing that "whether the doctor correctly prescribed restraints for appellee *or whether the nursing staff applied them properly *** are matters which generally involve professional judgment and skill, and if the exercise of such judgment and skill is at issue, expert testimony would no doubt be needed in an appropriate case" (emphasis added)). Moreover, as this court explained in *Woodard*, the need for expert testimony is not the determining factor. Rather, it is the nature of the conduct at issue. And the application of restraints to a patient for medical reasons is medical in nature. Accordingly, the circuit court did not err in determining that McDermott's failure-to-restrain claim sounded in medical negligence.

¶ 29 In her third issue, McDermott challenges the circuit court's decision to deny her request to subpoena Peters' medical records. However, in her motion she expressly stated that she was seeking those records for the specific purpose of preparing her section 2-622 report, and she has since filed that report. As a result, and because there is no indication that Peters' records might affect the dismissal of her claim against UCMC, the issue is moot.

¶ 30 For the foregoing reasons, we affirm the circuit court's order granting UCMC's motion to dismiss McDermott's claim against it.

¶ 31 Affirmed and remanded.