2020 IL App (1st) 192193-U
No. 1-19-2193

SECOND DIVISION
June 23, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| DANIEL PEREZ, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17 L 8878 |
| | ) | |
| ELLEN J. SUBSITS, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Thomas More Donnelly, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Where the plaintiff did not suffer any prejudice as a result of the amendment, the trial court did not abuse its discretion in permitting the plaintiff to file a second amended complaint shortly before trial, and where the defendant submitted the special interrogatories only to test a verdict on the premises liability claim, she waived any contention that the jury's response to the special interrogatories was inconsistent with the verdict on the negligence claim.

¶ 2    While helping defendant Ellen J. Subsits's grandson push his car into defendant's garage, plaintiff Daniel Perez tripped over some wood pieces on the floor, fell, and was injured. He subsequently brought this suit for damages. The jury awarded plaintiff net damages in the

amount of $150,000, and the trial court entered judgment accordingly. Following an unsuccessful posttrial motion, defendant appealed. Defendant argues on appeal that the trial court erred in permitting plaintiff to amend his complaint and that the jury's verdict was inconsistent with its answer to a special interrogatory. For the reasons that follow, we affirm.

¶ 3                                      BACKGROUND

¶ 4        Plaintiff brought this suit to recover damages he incurred as a result of the injury he sustained after tripping over a piece of wood in defendant's garage. Plaintiff's first amended complaint contained a single count and alleged the following. On May 29, 2016, defendant owned the home and garage located at 5351 W. Waveland in Chicago. On that date, plaintiff was lawfully present on defendant's property as an invitee. While on defendant's property, he sustained injuries due to a defective condition on the property, namely, while pushing a vehicle into defendant's garage, plaintiff tripped on loose pieces of wood lying on the garage floor, fell, and was injured.

¶ 5        Plaintiff alleged that the condition was not open and obvious; defendant had actual or constructive notice of the unreasonably dangerous condition; defendant had actual or constructive notice that her failure to remedy the condition created a high probability that those lawfully on the property would suffer injury; and defendant owed a duty to plaintiff to refrain from negligent conduct that would endanger him, including "refraining from a negligent standard of care in the remedy, repair or maintenance of her property in order to guard against foreseeable injuries to third parties proximately caused by the aforesaid unreasonably dangerous condition." Plaintiff alleged that defendant breached her duty in one or more of the following ways:

> "(a) permitted and allowed the aforesaid unreasonably dangerous condition at said
> Premises to be and remain in an unreasonably dangerous condition;

(b) failed to remedy or repair the aforesaid unreasonably dangerous condition at said Premises;

(c) failed to adequately maintain said Premises;

(d) failed to warn the Plaintiff[] of the aforesaid unreasonably dangerous condition at said Premises; [and]

(e) caused and created and/or allowed the aforesaid unreasonably dangerous condition to remain at said Premises through Defendant's negligence."

Plaintiff alleged that as a direct and proximate result of one or more of these acts and/or omissions by defendant, he suffered injuries and damages.

¶ 6    On July 25, 2019, the case was certified for trial, and a trial date of July 30, 2019, was set. The record does not contain a transcript of the July 30, 2019, proceedings, but the transcripts from subsequent dates indicate that the trial court addressed the parties' motions *in limine* on that day. On the evening of July 30, 2019, plaintiff filed a motion for leave to file a second amended complaint ("motion to amend"). In that motion, plaintiff stated that he desired to file a second amended complaint for the purpose of separating the existing allegations into two separate counts—one sounding in premises liability and the other in negligence. According to plaintiff, the first amended complaint contained mixed allegations of negligence and premises liability, and the separation of them into two distinct counts "would not change the theory of the case, the substance of the pleadings, nor the core operative facts."

¶ 7    The following day in court, defendant requested the opportunity to respond to plaintiff's motion to amend, which the trial court granted. In her response, defendant argued that there were no defects in the first amended complaint that necessitated amendment, she would be

prejudiced by the addition of a new claim on the eve of trial, plaintiff's request was untimely, and plaintiff could have amended at any other time leading up to trial.

¶ 8    On August 1, 2019, before the presentation of evidence, the trial court stated on the record that it had heard arguments that morning on plaintiff's motion to amend and that it had granted the motion. The record on appeal does not contain a transcript of the parties' arguments on the motion to amend or the reasons for the trial court's ruling.

¶ 9    Plaintiff's second amended complaint contained two counts. The first count sounded in premises liability and consisted of allegations that were virtually identical to the allegations contained in the first amended complaint. The second count sounded in negligence and alleged as follows. On May 26, 2019, plaintiff was lawfully on defendant's property as an invitee. Defendant owed plaintiff a duty to exercise ordinary care in the maintenance of her property. Plaintiff alleged that defendant breached her duty in one or more of the following ways:

"(a) Caused an unreasonably dangerous condition to exist on the property;

(b) Permitted and allowed a pile of wood to accumulate on her property;

(c) Permitted and allowed a pile of wood to accumulate in a position people would be expected to walk in her garage;

(d) Failed to clean or remedy the accumulation of wood on her garage floor;

(e) Failed to adequately maintain her garage in a reasonable safe manner[.]"

Plaintiff alleged that as a result of one or more of defendant's breaches, he suffered injuries and damages.

¶ 10    Also on August 1, 2019, the parties began the presentation of their evidence. Plaintiff first called defendant, who testified as follows. On May 29, 2016, she lived at 5351 W. Waveland with her grandson, Bret Subsits. She had lived there for 42 years. Plaintiff was her

long-time neighbor and good friend, and she relied on him to maintain her independence in her home. On the day in question, she called plaintiff to come help Bret get his broken-down car into the garage. She was not present during the time that the car was being pushed into the garage, but she later learned from plaintiff's wife that plaintiff had been injured.

¶ 11    Two days after the incident, defendant went out to the garage, where she found a single piece of wood trim lying in the walkway area of the floor. She picked it up and threw it in the garbage. There was other wood stacked up near some sawhorses, which had been there prior to plaintiff's fall. Defendant had not been in the garage for weeks prior to plaintiff's fall, because she only went in there occasionally when she went grocery shopping with her grandson.

¶ 12    Pictures admitted into evidence depicted a pile of long wood pieces lying on the floor of the garage off to the side, near some sawhorses and directly in front of what appears to be a work bench or shelving attached to or flush against the garage wall. Defendant testified that these pictures were taken weeks after plaintiff's fall, but generally depicted how the garage looked in May 2016. The wood that she found two days after plaintiff's fall was in the walkway of the garage, away from the stack of wood near the sawhorses.

¶ 13    Defendant acknowledged that she signed a document that stated, "While pushing the vehicle into my garage Daniel Perez tripped over some lumber trim that I had left on the garage floor," and "I was aware that this lumber was left on my garage floor." She signed the document at the request of plaintiff prior to the filing of the present suit and prior to the time that she had an attorney. She testified that she could not remember whether, prior to plaintiff's fall, she knew that there was wood lying on the garage floor in an area where someone might walk, but she was also shown the transcript of her deposition, at which she testified that she was not aware of that wood in the walkway. She testified that she signed the document to help herself. She also

testified, however, that the document was based on information she gave to plaintiff and that she signed it because it was correct.

¶ 14     Plaintiff's son, Daniel Perez, III, testified next. On the day in question, he was at plaintiff's home, preparing to attend a graduation party for his cousin. While at plaintiff's house, defendant called and asked if plaintiff would help her grandson, whose car had broken down in the alley behind the house. The first time that plaintiff and Perez, III, went out to the alley, Bret could not get the vehicle into neutral, so plaintiff and Perez, III, went back inside. Shortly thereafter, defendant called again, telling them that Bret had gotten the vehicle in to neutral. The men then returned to the alley to help Bret push the car into the garage.

¶ 15     As they were pushing, Bret was in the driver's seat, steering. Perez, III, was at the front of the vehicle, and plaintiff was at the passenger side window. When the vehicle was approximately three-quarters of the way into the garage, plaintiff suddenly fell, and Perez, III, heard the sound of plaintiff tripping over wood. Perez, III, rushed over to help plaintiff. Where plaintiff fell, Perez, III, saw a pile of wood, and plaintiff told him he had tripped over the wood. Looking at the pictures of the garage that were admitted into evidence, Perez, III, testified that as they were pushing the vehicle into the garage, it was not centered in the garage, but more to the left, toward the pile of wood trim, which was "sticking out." Perez, III, agreed that there was approximately five feet between the wood pile and the car at the time plaintiff fell.

¶ 16     After the fall, plaintiff insisted that he be left on the floor. He told Perez, III, that he felt something pop in his shoulder. Eventually, plaintiff got up and returned to his house. After Perez, III, and Bret got the car into the garage, Perez, III, also returned to plaintiff's house. Plaintiff and his wife then left for the hospital. Perez, III, later learned that plaintiff had separated his shoulder. Plaintiff eventually required surgery.

¶ 17    Plaintiff next presented the videotaped evidence deposition of Dr. Todd Rimington. Neither that video nor a transcript of that deposition is in the record on appeal.

¶ 18    Plaintiff next called Bret Subsits, who testified as follows. On May 29, 2016, he was living with defendant, his grandmother. On that day, as he was attempting to reverse his vehicle to park in defendant's garage, his car broke down. He called defendant and asked her to call plaintiff for help. When plaintiff and Perez, III, first came outside, Bret had not yet gotten the car into neutral, so they went back inside. After Bret got the car in neutral, they returned to help Bret push the car into the garage.

¶ 19    As they were pushing, Bret was in the driver's seat. At the time plaintiff fell, Bret was not looking at plaintiff, but he heard a loud noise that sounded like someone falling into a pile of wood. Bret looked over and plaintiff was no longer standing there. Bret jumped out of the car and went to plaintiff, who looked to be in a lot of pain. Bret asked plaintiff if he was okay, and plaintiff said no. On the ground where plaintiff fell was a lot of stuff, including wood. The wood and other stuff was not in the middle of the garage, however. Rather, the passenger side of the car was very close to the side of the garage and the stuff piled there, because Bret was not able to steer the car into the middle of the garage while they were pushing it backwards. He believed that the car was much closer to the side of the garage than five feet. He could not recall whether, at the time of plaintiff's fall, the wood was piled as depicted in the photos or whether it was more scattered.

¶ 20    Finally, plaintiff gave the following testimony. He lived next door to defendant and had been good friends with her for 32 years. On the day of his fall, plaintiff received a call from defendant asking if he would help Bret get his broken-down vehicle into the garage. Plaintiff and Perez, III, went outside to the alley. Because Bret could not get the car in neutral, they were

unable to push the car into the garage at first. Plaintiff and Perez, III, went back inside while Bret worked on getting the car into neutral. Once Bret was able to get the car into neutral, plaintiff and Perez, III, went back outside to help him push it into the garage.

¶ 21    When they started pushing the car, Bret was in the driver's seat, and plaintiff and Perez, III, were pushing at the front of the car. When the car was three quarters of the way into the garage, plaintiff told Perez, III, to stop pushing so that plaintiff could get a better grip to push by moving to the passenger-side door. About three feet into the garage, as he was walking to the passenger-side door, his left foot got caught on a piece of wood. As he took a step forward, he lost his balance and fell onto his left side onto some wood. He landed on his left chest, but his left arm went "completely back." At the time that he fell, there was approximately five feet between the car and the garage wall.

¶ 22    Plaintiff testified that the pictures admitted into evidence did not accurately represent how the wood was situated in the garage at the time of his fall. Instead of being piled together on the side as it appeared in the picture, there were a few pieces of wood scattered away from the wall. Although it was not in the middle of the garage floor, the scattered wood was away from the rest of the pile. Plaintiff admitted that he had seen the wood in the garage on prior occasions, but it never looked to be a tripping hazard.

¶ 23    After his fall, plaintiff went home and had his wife take him to the hospital, where he was diagnosed with a dislocated shoulder. Ultimately, he had to have surgery to repair his shoulder.

¶ 24    Plaintiff then rested, as did defendant.

¶ 25    During a discussion on jury instructions, defendant tendered three proposed special interrogatories. These interrogatories mirrored the first three paragraphs of Illinois Pattern Jury Instruction 120.08, the burden of proof instruction on premises liability. These special

interrogatories read as follows: (1) "Do you find that there was a condition on the property which presented an unreasonable risk of harm to people on the property?"; (2) "Do you find that the defendant knew or in the exercise of ordinary care should have known of both the condition and the risk?"; and (3) "Do you find that the defendant could reasonably expect that people on the property would not discovery [*sic*] or realize the danger or fail to protect themselves against such danger?" In discussing whether the proposed special interrogatories were in proper form, the trial court observed that they would only check a general verdict on the premises liability claim, but not a general verdict on plaintiff's negligence claim, and the parties agreed. Then, after making sure that the language of the special interrogatories did, in fact, match the language of the jury instruction on the elements of the premises liability claim, the trial court agreed to submit the special interrogatories to the jury.

¶ 26 Following closing arguments and deliberations, the jury returned a general verdict in favor of defendant on the premises liability claim and in favor of plaintiff on the negligence claim. The jury found that plaintiff's total damages were $300,000, but that plaintiff was 50% contributorily negligent, making his recoverable damages $150,000. The jury also answered all three of the special interrogatories in the negative.

¶ 27 Defendant filed a motion to reconsider and for judgment notwithstanding the verdict. With respect to the motion to reconsider, defendant argued that the trial court should not have permitted plaintiff to file his second amended complaint, because the four factors announced in *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263 (1992), weighed against permitting amendment; there was no evidence to support a claim of ordinary negligence; and defendant was surprised and prejudiced by the amendment where she did not have the opportunity to conduct discovery on the negligence claim. With respect to the motion for

judgment notwithstanding the verdict, defendant argued that the jury's special interrogatory finding that defendant did not or should not have known of both the condition and risk was irreconcilably inconsistent with a conclusion that plaintiff's injury was reasonably foreseeable—a conclusion that was necessary to establish a duty on the part of defendant in the negligence claim.

¶ 28 After the parties completed briefing on the motion, the trial court held a hearing, and the parties presented their arguments. During the discussions on defendant's argument that plaintiff should not have been allowed to amend the complaint, the following colloquy occurred:

"MR. FRITZ [defense counsel]: *** Then the second—to allege that the complaint was, in fact, a hybrid is a little bit late. No one including your Honor interpreted that original complaint as an ordinary negligence complaint. You refused to tender those instructions.

THE COURT: Well, they did. It was jumbled, and later upon examination they did have elements of premises liability in there. We found those.

MR. FRITZ: Right.

THE COURT: The allegations were jumbled in amongst ordinary negligence."

Ultimately, the trial court denied defendant's motion to reconsider and for judgment notwithstanding the verdict, but the trial court did not elaborate on its reasons for so holding.

¶ 29 Defendant then instituted this timely appeal.

¶ 30 ANALYSIS

¶ 31 On appeal, defendant argues that the trial court erred in permitting plaintiff to amend his complaint and that the jury's verdict was inconsistent with its answer to a special interrogatory. We disagree on both counts.

¶ 32    Defendant first argues that the trial court abused its discretion in permitting plaintiff to file his second amended complaint.  It is within the trial court's discretion whether to allow the amendment of pleadings, and we will not reverse the trial court's determination in that respect absent an abuse of discretion.  *Romito v. City of Chicago*, 2019 IL App (1st) 181152, ¶ 21.  In this case, defendant has failed to demonstrate that the trial court abused its discretion in permitting plaintiff to amend his complaint, because she failed to include in the record on appeal a transcript of the hearing on plaintiff's motion to amend.

> "An appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis.  Any doubts which may arise from the incompleteness of the record will be resolved against the appellant."

*Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).  Here, the order granting plaintiff's motion to amend does not explain the trial court's rationale for granting plaintiff's motion.  As stated above, the record on appeal does not contain a transcript of the hearing on the motion.  Instead, there is simply a statement by the trial court that the parties had presented their arguments on the motion and that the trial court had granted the motion.  Nowhere is there any explanation of the trial court's basis for granting the motion.  Although the trial court later stated at the hearing on defendant's posttrial motion that the first amended complaint contained mixed allegations of premises liability and ordinary negligence, there is no indication whether that fact or something else served as the basis for the trial court's decision to permit amendment.  Thus, absent a transcript of the proceedings on the motion to amend, we are unable to evaluate the trial court's reasoning in permitting plaintiff to amend his complaint.  Accordingly, we must presume that the

trial court did not err. *Romito*, 2019 IL App (1st) 181152, ¶ 24 (where the trial court's order did not indicate the trial court's reasoning for its decision and the record on appeal did not contain a transcript of the hearing, the record was inadequate to allow the appellate court to determine if the trial court's decision was an abuse of discretion).

¶ 33       Moreover, even if we were to only consider the record that is before us, we cannot agree that the trial court abused its discretion in permitting plaintiff to file his second amended complaint. In reviewing the trial court's decision on a motion to amend the pleadings, we consider four factors:

> "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified."

*Loyola Academy*, 146 Ill. 2d at 273.

¶ 34       The first factor—whether the proposed amendment would cure a defect in the original pleading—cuts in favor of amendment. As will be discussed below, the allegations of the first amended complaint supported claims for both premises liability and negligence, but the allegations were not separated into separate counts or labeled in any fashion, as required by section 2-613(a) of the Code of Civil Procedure ("Code") (735 ILCS 5/2-613(a) (West 2016)). The second amended complaint resolved this issue by separating the allegations into two distinct counts labeled premises liability and negligence.

¶ 35       Defendant's primary argument against the filing of the second amended complaint is that she was prejudiced by the addition of the negligence count during trial, because she conducted her discovery in a manner tailored solely to a premises liability claim. Specifically, defendant

argues that she asked questions at plaintiff's deposition that revolved primarily around plaintiff's prior knowledge of the wood on the floor, and had she known that plaintiff would be permitted to amend the complaint to include a claim of negligence, she would have also asked questions designed to show a lack of negligence by defendant or comparative negligence by plaintiff.

¶ 36    As an initial matter, defendant refers to the following legal principles:

"Ordinarily, once a trial has begun, an amendment should not be permitted to set up matters of which the pleader had full knowledge at the time of interposing the original pleading and no excuse is presented for not putting its substance in the original pleading. [Citation.]  This is particularly true where the amendment is prejudicial or would alter the nature and quality of the proof required to defend."

*Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 469 (1992).  Although this is certainly a correct statement of law, it has no applicability here, as trial had not yet started at the time that plaintiff sought, and the trial court granted, leave to file the second amended complaint.  Plaintiff filed his motion on July 30, 2019, while the parties and trial court were still addressing preliminary trial matters, and trial did not actually begin until August 1, 2019, after the trial court granted the motion to amend.  Accordingly, although plaintiff sought leave to amend very shortly before trial, it was not during trial, and as will be discussed below, his request was timely.

¶ 37    As for defendant's contention that she was surprised and prejudiced by the amendment, we do not find any merit in it.  As mentioned above, the first amended complaint contained a single, unlabeled count that contained mixed allegations of both premises liability and negligence.  Specifically, although not in exactly the same language, both the first amended complaint and the negligence count of the second amended complaint alleged that defendant owed plaintiff a duty to maintain her property in a non-negligent fashion for the safety of

plaintiff; she breached that duty by causing the wood to be present on the garage floor, permitting or allowing the wood to accumulate on the garage floor, failed to clean or remedy the wood on the garage floor, and failed to adequately maintain her garage; and plaintiff's injuries were proximately caused by defendant's breaches. Thus, because the allegations that comprised the negligence count in the second amended complaint were already present in the first amended complaint, we disagree that the second amended complaint reflected the "addition" of a negligence claim or that defendant was surprised by it. That claim existed in the first amended complaint just as much as the premises liability claim did, regardless of whether defendant chose to recognize it; the second amended complaint merely separated and labeled the already-existing allegations.

¶ 38       Similarly, defendant's claim that she was prejudiced by the amendment because she only conducted discovery on a single element of the premises liability claim lacks merit. Because the allegations that formed the negligence claim were alleged in the first amended complaint, there was no reason defendant could not have conducted discovery on the negligence allegations. Her counsel's choice to pursue a defense based on refuting a single element of the premises liability claim was just that—a strategic choice, albeit a questionable one on counsel's part. The factors of a negligence claim—duty, breach, and damages proximately caused by the breach—are also elements of a claim of premises liability. See *Doe v. Coe*, 2019 IL 123521, ¶ 34 (elements of negligence are duty owed to the plaintiff, defendant's breach of that duty, and injury to plaintiff proximately caused by defendant's breach); *Hope v. Hope*, 398 Ill. App. 3d 216, 219 (2010) (elements of premises liability claim include defendant's negligence and plaintiff's injury proximately caused by defendant's negligence). Thus, even if the first amended complaint arguably sounded only in premises liability, defendant still could (and perhaps should) have

conducted discovery on those elements if she thought they might lead to an additional defense. Certainly, defendant's negligence or lack thereof and plaintiff's contributory negligence would have been just as relevant to a claim of premises liability as it would be to a claim of negligence. In any case, it was not plaintiff's failure to amend earlier that precluded defendant from conducting discovery on those elements, given that the second amended complaint did not add any elements, factual allegations, or claims that were not already present in the first amended complaint.

¶ 39        As for the third factor—the timeliness of the amendment—this, too, cuts in favor of amendment. Section 2-616(a) of the Code provides:

> "*At any time before final judgment* amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim."

735 ILCS 5/2-616(a) (West 2016) (emphasis added). Here, although brought very shortly before trial began, plaintiff sought and the trial court granted leave to amend prior to final judgment being entered. Accordingly, under section 2-616(a) of the Code, amendment was timely sought.

¶ 40        The final factor is whether there were previous opportunities for plaintiff to amend the first amended complaint. Certainly, there is no dispute that plaintiff could have sought to file the second amended complaint sooner than he did. However, because defendant was not prejudiced by the amendment or plaintiff's failure to amend sooner, this factor alone does not require us to

conclude that the trial court abused its discretion in allowing plaintiff to file the second amended complaint. See *Lee*, 152 Ill. 2d at 469 (trial court did not abuse discretion in permitting the plaintiff to amend the complaint shortly before closing arguments, because although the plaintiff had other opportunities to amend, the defendant was not prejudiced by the amendment).

¶ 41    Aside from the four *Loyola* factors, defendant argues that the trial court should not have permitted plaintiff to add a claim of negligence because there was no evidence that defendant caused the wood to be on the floor. As an initial matter, defendant did not raise this contention in response to plaintiff's motion to amend and instead raised it for the first time in her motion to reconsider. As a result, defendant has waived this contention. See *Liceaga v. Baez*, 2019 IL App (1st) 181170, ¶ 25. We also observe that defendant has cited no authority for the proposition that a plaintiff seeking to amend a complaint must prove his or her claim before amendment will be permitted. For this reason, too, defendant has waived this contention. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (requiring that the argument section of appeals briefs "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009) ("The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) [citation], resulting in waiver."); *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.").

¶ 42    Even putting waiver aside, and assuming some obligation by plaintiff to prove his claim at the pleading stage, we find no merit in this contention. Defendant correctly points out that,

ordinarily, in a premises liability claim, a landowner may be held liable for injuries to invitees on his land arising out of a dangerous condition of the premises if the landowner had actual or constructive notice of the dangerous condition. *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 715 (1998). The landowner may also be held liable for injuries under an ordinary negligence claim—and thus dispose of the notice requirement—if the dangerous condition was placed on the premises through the defendant's negligence. *Id.*

¶ 43    According to defendant, before plaintiff could "add" the claim of negligence to the complaint, plaintiff had to demonstrate that defendant created the condition by placing the wood on the ground. Defendant argues that plaintiff failed to do this, as evidenced by the lack of supporting evidence produced during discovery and the jury's conclusion that defendant did not know or should have known of both the condition and risk. First, as previously discussed, plaintiff did not "add" the negligence claim; it was already included in the first amended complaint. Second, the record on appeal does not contain the entirety of the discovery conducted by the parties, making it impossible for us to assess the veracity of defendant's claim that no evidence was produced during discovery that indicated whether plaintiff caused the wood to be on the garage floor. Third, the jury's conclusions cannot be relevant to assessing whether the trial court erred in granting plaintiff leave to amend, given that the jury's conclusions were unknown at the time that amendment was allowed. Moreover, the fact that the jury might have found that defendant did not know or should have known of either the condition or the risk does not necessitate a conclusion that defendant did not cause the wood to be lying on the floor, as she could have caused the wood to be on the floor without realizing it. Finally, plaintiff attached the transcript of plaintiff's deposition to his motion for leave to file the second amended complaint. Attached as an exhibit to that deposition was the affidavit of defendant in which she attested that

plaintiff tripped over wood that she had left on the floor of the garage and that she was aware of the wood on the floor of the garage. Accordingly, there was, in fact, some evidence at the time of amendment that defendant caused the wood to be on the floor of the garage.

¶ 44     In sum, defendant failed to provide us with a sufficient record on which to find error in the trial court's grant of plaintiff's motion to amend. In addition, defendant has waived many of her contentions for a variety of reasons. Nevertheless, in reviewing what is before us, we conclude that the trial court did not abuse its discretion in permitting plaintiff to file the second amended complaint.

¶ 45     Defendant's other argument on appeal is that the jury's verdict in favor of plaintiff on the negligence claim is irreconcilably inconsistent with the jury's negative answer to the special interrogatory asking, "Do you find that the defendant knew or in the exercise of ordinary care should have known of both the condition and the risk?" We conclude that defendant has waived this contention, because it is inconsistent with her position at trial that this special interrogatory would test a verdict for plaintiff only on the premises liability claim and would not test the basis of a plaintiff's verdict on the negligence claim.

¶ 46     A party waives the right to complain about an error that is inconsistent with the position that party took in an earlier proceeding. *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000). This means that a party cannot seek reversal on appeal based on a claim of error that is inconsistent with the position that party took in the trial court. See *id.* at 255-56 (where the plaintiff argued in the trial court that the defendant's witness was barred under a Supreme Court Rule that had been repealed, she could not argue later on appeal that the witness should have been excluded under the correct Supreme Court Rule); *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 436-37 (1992) (where the parties repeatedly changed positions on whether the case involved

joint or successive liability, they waived the issue on appeal). In addition, a party cannot complain about an error that he or she induced the court to make or to which he or she consented. *McMath*, 191 Ill. 2d at 255. To hold otherwise would be manifestly unfair, as it would permit the party a second trial based on an error that he or she injected into the proceedings. *Id.*

¶ 47    Here, the record makes clear that defendant submitted her special interrogatories for the sole purpose of testing a verdict in favor of plaintiff on the premises liability claim. The following discussion, which occurred at the time defendant submitted the special interrogatories, illustrates this fact:

"MR. FRITZ [defense counsel]: So I'm going to—I will bring some special interrogatories *based on the premises count*. I'll bring maybe the first three items.

THE COURT: You're—I'd like you to tender those. I wish you would have tendered them earlier.

There are other ways to separate Count I and Count II on the verdict form, Verdict Form A.

MR. GALLAGHER [plaintiff's counsel]: I think that that would be the appropriate way to do it.

THE COURT: That's a way of checking it. *** [S]o I think another way of checking it, and, to my mind, the preferable way, but, you know, I'll—I'm amenable to the parties is that you break down on Verdict Form A as to, we find for, you know, and break it down Count I and Count II.

MR. FRITZ: The only problem with that is that we're—there's going to be overlap. What if they put the same numbers on each one? Are they awarding double?

THE COURT: Well, no, no. There's one recovery, but—and this is just what I've seen.

There isn't any real outline for it in the IPI, but we've—we find for plaintiff and against defendants and then a blank for Count I, yes and no; Count II, yes and no.

MR. FRITZ: Oh, we can do that.

THE COURT: And that way you know whether it's premises liability or ordinary negligence, and I think that—

MR. FRITZ: Or both or neither.

THE COURT: Right. So that, I think, is a better check on the verdict and preserves your legal issues than a special because for some reason the Appellate Courts and Supreme Courts do not like special interrogatories anymore and they're finding a way—

MR. GALLAGHER: And the legislature.

THE COURT: The legislature apparently doesn't either, but I think that's a better way, and I think that's a clearer way for all sides to know exactly what they found and why they found it, so that would be what I would suggest. Is that amenable to both sides?

MR. GALLAGHER: Yes.

THE COURT: Mr. Fritz, is that amenable?

MR. FRITZ: I may still tender for your refusal some special interrogatories.

THE COURT: Okay, and you may, and—

MR. FRITZ: Here, I'll do it right now because I brought them with me.

THE COURT: Oh, you did?

MR. FRITZ: Here is—and, unfortunately, I didn't mark them. Apparently, I just printed off clean copies, *but they just follow the first three paragraphs of 120.08 verbatim.*

We can call it Defendant's Instructions 1, 2 and 3, and I'll just offer them. You can either reserve them for tonight or you can—

THE COURT: Well, I don't have any discretion if they're proper in form, so that's—the only question is whether they're proper in form and whether they've met the legal and formal requirements.

MR. GALLAGHER: And that's the other issue, your Honor, I would say, if they're proper in form and if they would check a general verdict.

THE COURT: Right. That's the legal requirement.

MR. GALLAGHER: And based on the fact that we're giving both the 20.01 [negligence] series and the 120.08 [premises liability] series, not one of these special interrogatories would check a verdict.

THE COURT: Well, they would if we identify—if we identify in Count A what we're finding.

If we're breaking it out to Count I and Count II, then it would control if these accurately state one of the issues, so based on that, do these accurately state one of the issues?

MR. GALLAGHER: It still wouldn't check a verdict because if we break it out, is it based on Count I or Count II and they put yes to Count I and Count II—

THE COURT: Well, then—then the verdict would stand. It's not inconsistent.

MR. FRITZ: What if they put no to one of these special interrogatories?

THE COURT:  *Well, it would still—it wouldn't—as to ordinary negligence, none of these would check the verdict.*

MR. FRITZ:  *Right.*

THE COURT:  *But if they returned a verdict as to a premises liability only verdict, they would check the verdict.*

MR. GALLAGHER:  *Right.  I agree with that*, if it was—

THE COURT:  It doesn't have to check every one, does it, I mean, because obviously that wouldn't be the case."  (Emphasis added.)

After this discussion, the parties and the trial court went on to make sure that the language of the special interrogatories precisely matched the language of the jury instruction to be given on the elements of the premises liability claim.  In closing arguments, both sides addressed the special interrogatories and how the jury should answer them, but only in the context of the premises liability claim.  It was not until defendant filed her posttrial motion that she made any sort of argument that the special interrogatories had any application or relevance to the negligence claim.  Plaintiff refuted this by arguing that defendant had presented the special interrogatories as being specifically tailored to the premises liability claim.

¶ 48    Given all of this—defendant's affirmative representation that the special interrogatories were being offered on the premises liability claim, the fact that the language of the special interrogatories was identical to the first three elements of the premises liability instruction given to the jury, counsel's express agreement that the special interrogatories would not test a plaintiff's verdict on negligence and would only test a verdict on the premises liability claim, and the parties' arguments to the jury that the special interrogatories related to the premises liability claim—it is clear to us that defendant tendered the special interrogatories only for the purpose of

testing the jury's verdict on the premises liability claim, and affirmatively disclaimed any relevance of the special interrogatories to a verdict on the negligence claim. As a result of defendant's position on this issue, plaintiff had no opportunity or reason prior to trial to object to, and the trial court had no opportunity or reason to rule on, whether the special interrogatories should be given for the purpose of testing a verdict on the negligence claim.

¶ 49 Now, on appeal, defendant has changed positions and argues that the special interrogatories—or at least the one inquiring into whether defendant knew or should have known of both the condition and risk—does, in fact, test a negligence verdict in favor of plaintiff. This position is at complete odds with defendant's position in the trial court, and it would be manifestly unfair to plaintiff to reward defendant's change in position with a new trial, when the special interrogatories were given with the understanding that they related only to the premises liability claim—an understanding that defendant induced by representing that she was submitting the special interrogatories on the premises liability claim and admitting that they would not test a negligence verdict. Accordingly, even if defendant is correct that the special interrogatory might relate to the foreseeability of plaintiff's injury, she has waived that issue on appeal by taking the opposite position in the trial court, and since it would be unfair to require plaintiff to incur the expense and hardship of retrying this case because of defendant's inconsistent positions, we decline to overlook that waiver. See *id.* at 255-56 (although the supreme court rule that the plaintiff argued in the trial court governed the admission of defendant's expert testimony had, in fact, been repealed and replaced with a different rule, plaintiff was not permitted to raise that issue on appeal because she had advocated for the use of the repealed rule in the trial court); see also *Young v. Cerniak*, 126 Ill. App. 3d 952, 968-69 (1984) (where a party acquiesces in the

wrongful instruction of the jury and the giving of verdict forms that allow for an inconsistent verdict, that party cannot later object on appeal).

¶ 50                                    CONCLUSION

¶ 51          For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 52          Affirmed.